UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| and | ) |
| STATE OF TEXAS | ) |
| Plaintiffs, | ) |
| v. | ) |
| MARTIN MARIETTA MATERIALS, INC. | ) |
| and | ) |
| TEXAS INDUSTRIES, INC. | ) |
| Defendants. | ) |

## FINAL JUDGMENT

WHEREAS, Plaintiffs, the United States of America and the State of Texas, filed their Complaint on June 26, 2014, Plaintiffs and Defendants, Martin Marietta Materials, Inc. ("Martin Marietta") and Texas Industries, Inc. ("Texas Industries"), by their respective attorneys, have consented to the entry of this Final Judgment without trial or adjudication of any issue of fact or law, and without this Final Judgment constituting any evidence against or admission by any party regarding any issue of fact or law;

AND WHEREAS, Defendants agree to be bound by the provisions of this Final Judgment pending its approval by the Court;

AND WHEREAS, the essence of this Final Judgment is the prompt and certain divestiture of certain rights or assets by Defendants to assure that competition is not substantially lessened;

AND WHEREAS, Plaintiffs require Defendants to make certain divestitures for the purpose of remedying the loss of competition alleged in the Complaint;

AND WHEREAS, Defendants have represented to Plaintiffs that the divestitures required below can and will be made and that Defendants will later raise no claim of mistake, hardship or difficulty of compliance as grounds for asking the Court to modify any of the provisions contained below;

NOW THEREFORE, before any testimony is taken, without trial or adjudication of any issue of fact or law, and upon consent of the parties, it is ORDERED, ADJUDGED AND DECREED:

## I. Jurisdiction

This Court has jurisdiction over the subject matter of and each of the parties to this action. The Complaint states a claim upon which relief may be granted against Defendants under Section 7 of the Clayton Act, as amended (15 U.S.C. § 18).

## II. Definitions

As used in this Final Judgment:

A.  "Acquirer" means the entity to whom Defendants divest the Divestiture Assets.

B.  "Martin Marietta" means Defendant Martin Marietta Materials, Inc., a North Carolina corporation with its headquarters in Raleigh, North Carolina, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships and joint ventures, and their directors, officers, managers, agents, and employees.

C.  "Texas Industries" means Defendant Texas Industries, Inc., a Delaware corporation with its headquarters in Dallas, Texas, its successors and assigns, and its

subsidiaries, divisions, groups, affiliates, partnerships and joint ventures, and their directors, officers, managers, agents, and employees.

    D.    "Divestiture Assets" means:

        1.    the aggregate quarry, including the portable plant, located at 12310 W. Holder Road, Mill Creek, Oklahoma 74856 (the "North Troy Quarry");

        2.    the rail yard located at 1760 Z Street Office, Dallas, Texas 75229 (the "Dallas Yard");

        3.    the rail yard located at 6601 Eubanks Street, Frisco, Texas 75034 (the "Frisco Yard");

        4.    all tangible assets used at or for the North Troy Quarry and the Dallas and Frisco Yards, including, but not limited to, all manufacturing equipment, tooling, and fixed assets, real property (leased or owned), mining equipment, aggregate reserves, personal property, inventory, office furniture, materials, supplies, and on- or off-site warehouses or storage facilities; all licenses, permits, and authorizations issued by any governmental organization; all contracts, agreements, leases (including renewal rights), commitments, and understandings, including sales agreements and supply agreements; all customer lists, contracts, accounts, and credit records; all other records; and, at the option of the Acquirer, a number of trucks, rail cars, and other vehicles usable at each of the North Troy Quarry and the Dallas and Frisco Yards, (limited, with respect to rail cars, to those that are used to serve the Dallas and Frisco Yards from the North Troy Quarry), equal to the average number of vehicles of each type used at the North Troy Quarry and the Dallas and Frisco Yards per month during the months of operation between January 1, 2013, and December 31, 2013 (calculated by averaging the number of each type of

vehicle that was used at the North Troy Quarry and the Dallas and Frisco Yards at any time during each month of operation); and

        5.    all intangible assets used in the production and sale of aggregate produced at the North Troy Quarry or related to the Dallas and Frisco Yards, including, but not limited to, all contractual rights, patents, licenses and sublicenses, intellectual property, technical information, computer software (including dispatch software and management information systems) and related documentation, know-how, trade secrets, drawings, blueprints, designs, design protocols, specifications for materials, specifications for parts and devices, safety procedures for the handling of materials and substances, quality assurance and control procedures, design tools and simulation capability, all manuals and technical information provided by Defendants to their own employees, customers, suppliers, agents, or licensees, and all data (including aggregate reserve testing information) concerning the North Troy Quarry and the Dallas and Frisco Yards; provided, however, that with respect to any intellectual property, software, and systems used primarily for assets other than the Dallas and Frisco Yards and the North Troy Quarry, the Divestiture Assets shall include instead a perpetual royalty-free, non-exclusive license to all such intellectual property, software, and systems.

### III. Applicability

A.    This Final Judgment applies to Martin Marietta and Texas Industries, as defined above, and all other persons in active concert or participation with any of them who receive actual notice of this Final Judgment by personal service or otherwise.

B.    If, prior to complying with Section IV and V of this Final Judgment, Defendants sell or otherwise dispose of all or substantially all of their assets or of lesser business units that

4

include the Divestiture Assets, they shall require the purchaser to be bound by the provisions of this Final Judgment. Defendants need not obtain such an agreement from the acquirer of the assets divested pursuant to this Final Judgment.

### IV. Divestitures

A.   Defendants are ordered and directed, within 90 calendar days after the filing of the Complaint in this matter, or five (5) calendar days after notice of the entry of this Final Judgment by the Court, whichever is later, to divest the Divestiture Assets in a manner consistent with this Final Judgment to an Acquirer acceptable to the United States, in its sole discretion after consultation with the State of Texas. The United States, in its sole discretion, may agree to one or more extensions of this time period not to exceed 90 calendar days in total, and shall notify the Court in such circumstances. Defendants agree to use their best efforts to divest the Divestiture Assets as expeditiously as possible.

B.   Notwithstanding the provisions of Paragraph IV(A), upon written request of Defendants, the United States, in its sole discretion, after consultation with the State of Texas, may agree, in writing, to exclude from the Divestiture Assets any portion thereof that the Acquirer, at its option, elects not to acquire.

C.   In accomplishing the divestiture ordered by this Final Judgment, Defendants promptly shall make known, by usual and customary means, the availability of the Divestiture Assets. Defendants shall inform any person making inquiry regarding a possible purchase of the Divestiture Assets that they are being divested pursuant to this Final Judgment and provide that person with a copy of this Final Judgment. Defendants shall offer to furnish to all prospective Acquirers, subject to customary confidentiality assurances, all information and documents

relating to the Divestiture Assets customarily provided in a due diligence process. Defendants shall make available such information to Plaintiffs at the same time that such information is made available to any other person.

D.   Defendants shall provide the Acquirer and the United States with information relating to the personnel involved in the operation of the Divestiture Assets to enable the Acquirer to make offers of employment. Defendants will not interfere with any negotiations by the Acquirer to employ any Defendant employee whose primary responsibility is the operation of the Divestiture Assets.

E.   Defendants shall permit prospective Acquirers of the Divestiture Assets to have reasonable access to personnel and to make inspections of the physical facilities of the Divestiture Assets; access to any and all environmental, zoning, and other permit documents and information; and access to any and all financial, operational, or other documents and information customarily provided as part of a due diligence process.

F.   Defendants shall warrant to the Acquirer that each asset will be operational on the date of sale.

G.   Defendants shall not take any action that will impede in any way the permitting, operation, or divestiture of the Divestiture Assets.

H.   Defendants shall warrant to the Acquirer that there are no material defects in the environmental, zoning or other permits pertaining to the operation of each asset, and that following the sale of the Divestiture Assets, Defendants will not undertake, directly or indirectly, any challenges to the environmental, zoning, or other permits relating to the operation of the Divestiture Assets.

I.  Unless the United States otherwise consents in writing, the divestiture pursuant to Section IV, or by trustee appointed pursuant to Section V, of this Final Judgment, shall include the entire Divestiture Assets, and shall be accomplished in such a way as to satisfy the United States, in its sole discretion, after consultation with the State of Texas, that the Divestiture Assets can and will be used by the Acquirer as part of a viable, ongoing business in the production and sale of aggregate. The divestitures, whether pursuant to Section IV or Section V of this Final Judgment,

(1) shall be made to an Acquirer that, in the United States's sole judgment, after consultation with the State of Texas, has the intent and capability (including the necessary managerial, operational, technical and financial capability) of competing effectively in the business of producing and selling aggregate; and

(2) shall be accomplished so as to satisfy the United States, in its sole discretion, after consultation with the State of Texas, that none of the terms of any agreement between an Acquirer and Defendants give Defendants the ability unreasonably to raise the Acquirer's costs, to lower the Acquirer's efficiency, or otherwise to interfere in the ability of the Acquirer to compete effectively.

## V. Appointment of Trustee

A.  If Defendants have not divested the Divestiture Assets within the time period specified in Paragraph IV(A), Defendants shall notify the United States and the State of Texas of that fact in writing. Upon application of the United States, the Court shall appoint a trustee selected by the United States and approved by the Court to effect the divestiture of the Divestiture Assets.

B.  After the appointment of a trustee becomes effective, only the trustee shall have the right to sell the Divestiture Assets. The trustee shall have the power and authority to accomplish the divestiture to an Acquirer acceptable to the United States, after consultation with

the State of Texas, at such price and on such terms as are then obtainable upon reasonable effort by the trustee, subject to the provisions of Sections IV, V, and VI of this Final Judgment, and shall have such other powers as this Court deems appropriate. Subject to Paragraph V(D) of this Final Judgment, the trustee may hire at the cost and expense of Defendants any investment bankers, attorneys, or other agents, who shall be solely accountable to the trustee, reasonably necessary in the trustee's judgment to assist in the divestiture.

C. Defendants shall not object to a sale by the trustee on any ground other than the trustee's malfeasance. Any such objections by Defendants must be conveyed in writing to the United States and the trustee no later than ten (10) calendar days after the trustee has provided the notice required under Section VI.

D. The trustee shall serve at the cost and expense of Defendants, on such terms and conditions as the United States approves, including confidentiality requirements and conflict of interest certifications. The trustee shall account for all monies derived from the sale of the assets sold by the trustee and all costs and expenses so incurred. After approval by the Court of the trustee's accounting, including fees for its services yet unpaid and those of any professionals and agents retained by the trustee, all remaining money shall be paid to Defendants and the trust shall be terminated. The compensation of the trustee and any professionals and agents retained by the trustee shall be reasonable in light of the value of the Divestiture Assets and based on a fee arrangement providing the trustee with an incentive based on the price and terms of the divestiture and the speed with which it is accomplished, but timeliness is paramount. If the trustee and Defendants are unable to reach agreement on the trustee's compensation or other terms and conditions of sale within fourteen (14) calendar days of appointment of the trustee, the

United States may, in its sole discretion, take appropriate action, including making a recommendation to the Court.

E.  Defendants shall use their best efforts to assist the trustee in accomplishing the required divestiture. The trustee and any consultants, accountants, attorneys, and other agents retained by the trustee shall have full and complete access to the personnel, books, records, and facilities of the assets to be divested, and Defendants shall develop financial and other information relevant to such business as the trustee may reasonably request, subject to reasonable protection for trade secret or other confidential research, development, or commercial information. Defendants shall take no action to interfere with or to impede the trustee's accomplishment of the divestiture.

F.  After its appointment, the trustee shall file monthly reports with the United States and, as appropriate, the Court setting forth the trustee's efforts to accomplish the divestiture ordered under this Final Judgment. To the extent such reports contain information that the trustee deems confidential, such reports shall not be filed in the public docket of the Court. Such reports shall include the name, address, and telephone number of each person who, during the preceding month, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring, any interest in the Divestiture Assets, and shall describe in detail each contact with any such person. The trustee shall maintain full records of all efforts made to divest the Divestiture Assets.

G.  If the trustee has not accomplished the divestiture ordered under this Final Judgment within six (6) months after the trustee's appointment, the trustee shall promptly file with the Court a report setting forth (1) the trustee's efforts to accomplish the required divestiture, (2) the reasons, in the trustee's judgment, why the required divestiture has not been

accomplished, and (3) the trustee's recommendations. To the extent such report contains information that the trustee deems confidential, such reports shall not be filed in the public docket of the Court. The trustee shall at the same time furnish such report to the United States, which shall have the right to make additional recommendations consistent with the purpose of the trust. The Court thereafter shall enter such orders as it shall deem appropriate to carry out the purpose of the Final Judgment, which may, if necessary, include extending the trust and the term of the trustee's appointment by a period requested by the United States.

H. If the United States determines that the trustee has ceased to act or failed to act diligently or in a reasonably cost-effective manner, it may recommend the Court appoint a substitute trustee.

## VI. Notice of Proposed Divestiture

A. Within two (2) business days following execution of a definitive divestiture agreement, Defendants or the trustee, whichever is then responsible for effecting the divestiture required herein, shall notify the United States and the State of Texas of any proposed divestiture required by Section IV or V of this Final Judgment. If the trustee is responsible, it shall similarly notify Defendants. The notice shall set forth the details of the proposed divestiture and list the name, address, and telephone number of each person not previously identified who offered or expressed an interest in or desire to acquire any ownership interest in the Divestiture Assets, together with full details of the same.

B. Within fifteen (15) calendar days of receipt by the United States of such notice, the United States, after consultation with the State of Texas, may request from Defendants, the proposed Acquirer, any other third party, or the trustee, if applicable, additional information

concerning the proposed divestiture, the proposed Acquirer, and any other potential Acquirer. Defendants and the trustee shall furnish any additional information requested within fifteen (15) calendar days of the receipt of the request, unless the parties shall otherwise agree.

    C.    Within thirty (30) calendar days after receipt of the notice or within twenty (20) calendar days after the United States has been provided the additional information requested from Defendants, the proposed Acquirer, any third party, and the trustee, whichever is later, the United States shall provide written notice to Defendants and the trustee, if there is one, stating whether or not it objects to the proposed divestiture. If the United States provides written notice that it does not object, the divestiture may be consummated, subject only to Defendants' limited right to object to the sale under Section V(C) of this Final Judgment. Absent written notice that the United States does not object to the proposed Acquirer or upon objection by the United States, a divestiture proposed under Section IV or Section V shall not be consummated. Upon objection by Defendants under Section V(C), a divestiture proposed under Section V shall not be consummated unless approved by the Court.

## VII. Financing

Defendants shall not finance all or any part of any purchase made pursuant to Section IV or V of this Final Judgment.

## VIII. Hold Separate

Until the divestiture required by this Final Judgment has been accomplished, Defendants shall take all steps necessary to comply with the Hold Separate Stipulation and Order entered by this Court. Defendants shall take no action that would jeopardize the divestiture ordered by this Court.

11

## IX. Affidavits

A.  Within twenty (20) calendar days of the filing of the Complaint in this matter, and every thirty (30) calendar days thereafter until the divestiture has been completed under Section IV or V, Defendants shall deliver to the United States an affidavit as to the fact and manner of its compliance with Section IV or V of this Final Judgment. Each such affidavit shall include the name, address, and telephone number of each person who, during the preceding thirty (30) calendar days, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring, any interest in the Divestiture Assets, and shall describe in detail each contact with any such person during that period. Each such affidavit shall also include a description of the efforts Defendants have taken to solicit buyers for the Divestiture Assets, and to provide required information to prospective Acquirers, including the limitations, if any, on such information. Assuming the information set forth in the affidavit is true and complete, any objection by the United States to information provided by Defendants, including limitation on information, shall be made within fourteen (14) calendar days of receipt of such affidavit.

B.  Within twenty (20) calendar days of the filing of the Complaint in this matter, Defendants shall deliver to the United States an affidavit that describes in reasonable detail all actions Defendants have taken and all steps Defendants have implemented on an ongoing basis to comply with Section VIII of this Final Judgment. Defendants shall deliver to the United States an affidavit describing any changes to the efforts and actions outlined in Defendants' earlier affidavits filed pursuant to this section within fifteen (15) calendar days after the change is implemented.

C. Defendants shall keep all records of all efforts made to preserve and divest the Divestiture Assets until one year after such divestiture has been completed.

## X. Compliance Inspection

A. For the purposes of determining or securing compliance with this Final Judgment, or of any related orders such as any Hold Separate Order, or of determining whether the Final Judgment should be modified or vacated, and subject to any legally recognized privilege, from time to time authorized representatives of the United States Department of Justice, including consultants and other persons retained by the United States, shall, upon written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, and on reasonable notice to Defendants, be permitted:

(1) access during Defendants' office hours to inspect and copy, or at the option of the United States, to require Defendants to provide hard copy or electronic copies of, all books, ledgers, accounts, records, data, and documents in the possession, custody, or control of Defendants, relating to any matters contained in this Final Judgment; and

(2) to interview, either informally or on the record, Defendants' officers, employees, or agents, who may have their individual counsel present, regarding such matters. The interviews shall be subject to the reasonable convenience of the interviewee and without restraint or interference by Defendants.

B.   Upon the written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, Defendants shall submit written reports or response to written interrogatories, under oath if requested, relating to any of the matters contained in this Final Judgment as may be requested.

C.   No information or documents obtained by the means provided in this section shall be divulged by the United States to any person other than an authorized representative of the executive branch of the United States, or the Texas Attorney General's Office, except in the course of legal proceedings to which the United States is a party (including grand jury proceedings), or for the purpose of securing compliance with this Final Judgment, or as otherwise required by law.

D.   If at the time information or documents are furnished by Defendants to the United States, Defendants represent and identify in writing the material in any such information or documents to which a claim of protection may be asserted under Rule 26(c)(7) of the Federal Rules of Civil Procedure, and Defendants mark each pertinent page of such material, "Subject to claim of protection under Rule 26(c)(7) of the Federal Rules of Civil Procedure," then the United States shall give Defendants ten (10) calendar days notice prior to divulging such material in any legal proceeding (other than a grand jury proceeding).

## XI. No Reacquisition

Defendants may not reacquire any part of the Divestiture Assets during the term of this Final Judgment.

## XII. Retention of Jurisdiction

This Court retains jurisdiction to enable any party to this Final Judgment to apply to this Court at any time for further orders and directions as may be necessary or appropriate to carry out or construe this Final Judgment, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions.

## XIII. Expiration of Final Judgment

Unless this Court grants an extension, this Final Judgment shall expire ten years from the date of its entry.

## XIV. Public Interest Determination

Entry of this Final Judgment is in the public interest. The parties have complied with the requirements of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16, including making copies available to the public of this Final Judgment, the Competitive Impact Statement, and any comments thereon and the United States's responses to comments. Based upon the record before the Court, which includes the Competitive Impact Statement and any comments and response to comments filed with the Court, entry of this Final Judgment is in the public interest.

Date: Sept. 30, 2014

Court approval subject to procedures of Antitrust Procedures and Penalties Act, 15 U.S.C. § 16

_____

United States District Judge